Okay, our second case this morning is number 17-1946 LF Centennial Limited v. Iancu. Mr. Good morning, your honors. May it please the court. The case we have for you today is an appeal from a final rejection of claims in an inter-parties re-exam. Claims 1 and 2 were rejected as being obvious over the FAVSO2 instruction sheet, and as well as dependent claims 328 were also rejected as being obvious over the same reference in view of the Bright Tech Catalog. I'd like to address two issues this morning, one being the status of the FAVSO2 instruction sheet as a printed publication, and then the second issue is the board's construction of the phrase secured to said backside of said console. Could you help me with the claim construction? I don't understand. This is an oddly written claim, but these various limitations saying said kit, that sounds as though it's just a requirement that these parts be capable of doing something. Why is everybody looking to find something in the prior art where the thing was actually done? That doesn't seem to be the issue under the claim. The issue is whether the parts are capable of doing that. You're correct, Your Honor, and I'm not going to actually focus on the obviousness issue of whether the FAVSO2 instruction shows the three configurations for the kit. The issue I'd like to focus on is very specifically whether the spine is secured to the backside of the console. What we think is in the FAVSO2 instruction sheet, that that device is not capable of doing that. The FAVSO2 instruction sheet shows a unit that has glass shelves, and the legs and the spine of that unit secure through these shelves with threaded posts. The board at the lower finding indicated they actually specifically found that it did that. It secured through the shelves and was not secured to the backside, but they nevertheless found that statement in the claim was broad enough to read to cover that embodiment. They're basically saying that a unit that has a spine that extends through the shelf adjacent to the back is the same as a unit that has a spine that's secured with fasteners through the rear to shelf supports, where it sits on the backside of the unit and is secured with fasteners through that spine into the shelf supports. That's where we find we feel that the board's construction of that was a broadest possible interpretation rather than a broadest reasonable interpretation in light of the claims and in light of the specification. The drawings clearly show in the patent that the only embodiments that are shown are a single long spine that's secured to the shelf supports with the fasteners at the backside. Therefore, we think that the board's construction of adjacent to or secured adjacent through an area near the back was overly broad. We just think it was a possible broadest construction. Our primary alliance for that position is really based on the Microsoft case, Microsoft versus ProxyCon, and that was at 781 F3, 1298. That case indicates that even when giving claims their broadest reasonable interpretation, the board cannot construe claims so broadly that its constructions are unreasonable under general claim construction principles. We actually had a prior construction of that specific term in a related court case. In that case, the Markman construction was secured to the backside of said console means fastened to a surface from the back, and therefore the board argued that they didn't need to adopt that because it's the broadest reasonable interpretation of the claims versus a Markman construction. Which could be narrower, but it doesn't necessarily have to be narrower. In the lower court case, the defendants actually asked for a much narrower construction. They actually asked that the construction be that the unit be secured, that it have upper and lower shelves, and that the unit be secured, the spine be secured to those upper and lower shelves. My objection to that instruction sheet as a prior printed publication is we don't believe that the evidence of record is sufficient to support the substantial evidence. In what particular way? If we look at what exactly the evidence is in the case, we have the declaration of Steve Sculler, who is the CEO of the requester, the third party requester. He indicates that he flew to China to Braytech showroom in April of 2006, and he received that instruction sheet during an inquiry into that. He's an interested party? He is an interested party. Is it your view that his testimony has to be corroborated? It actually is my view. That's what I would like the position of the court to be in this case, is that it needs to be corroborated. I know this isn't an interference case. In interference cases at the board... Our case law is broader than that. I'm sorry? Our case law is broader than in the interference concept. We've said generally that a testimony has to be corroborated. Okay. Yes, I would agree with that. The inventor's testimony would need to be corroborated. Here we have a third party requester who's given a very limited statement as to, I flew to China. There's no indication of the exact date he flew to China. There's no indication of actually even where Braytech showroom is. There's an address on the Braytech catalog telephone number. Let's just assume for the moment that a declarant doesn't have to give all those blow-by-blow details in a declaration. But what we have here is something that supports Mr. Scholar's story. And I don't know if it's enough. Maybe it is. But the story is the Braytech catalog that came out in 2006 shows a photograph of this particular TV console. Then there's the Consumer Electronics Show Daily, which also Braytech is advertising and promoting a picture of this very particular television console. And so let's assume for the moment that we accept and defer to the fact-finding that those documents show that this product existed and was on sale and commercially available to anybody. And it was widely advertised through the Consumer Electronics Daily as well as through the Braytech catalog that was available at the show. So then the question is, well, with multi-component products like this that require assembly, is it a reasonable inference for the board to find that multi-component products like this that require assembly would come with some kind of instruction sheet on how to assemble said multi-component product? Yes, I would agree 100% that if the unit was for sale at that point, it's likely that it would have had an instruction sheet with it. And so therefore, we're not living in a world where we have nothing more than Mr. Scholar's declaration that he flew to China, went to a showroom, picked up the instruction sheet. We're looking at that declaration in the context of these other pieces of evidence, which are probative and tend to show and confirm his story that there were instruction sheets that existed in 2006. Okay, what I would argue, Your Honor, is that the evidence in the Braytech catalog is evidence that the unit existed. Somebody obviously took a photograph of it. So there must have been a prototype available. So I would agree there. But the declarants did not provide any evidence that the unit was actually for sale. It was advertised that it might be available. But that doesn't mean there was – the Braytech catalog didn't have any prices in it, which means it was probably a distributor's catalog to indicate that this item might be available. But it's often in the furniture industry that the CES show and these other shows are kind of testing grounds for products where they will bring them to the show, show them. But they may not have any inventory in stock as of then. And I know that nobody testified to that. Is that your pivot point in this case, that maybe we don't know if the catalog and the CES daily advertisement are actually evidence that the product was on sale at that moment? That's exactly my point, Your Honor. But if – what if we disagree with that in the sense that we defer to the board who concluded otherwise, that these things were on sale and therefore it's a natural inference to believe that when it comes in the box, you're going to find an instruction sheet in there? Right. That is a natural inference. But I would argue that the evidence isn't enough to find that it's on sale. It's actually been on sale. Actually, Judge McCarthy at the board agreed with that position. The only reason that Judge McCarthy eventually found that it was a printed publication was that he accepted the testimony of Steve Sculler that the instruction sheet was available when he went to go get it in China and that the Bray Tech catalog did not indicate that it was physical. He didn't find – he didn't agree with the majority that they found that it was a commercial product, that it was for sale. What is the instruction sheet used for to show here? The instruction sheet is used to show by the requester that the – it's the primary reference, so it's used to show that the parts are there and that they're assembled in the way that the claim instructs. It shows how to put it together? It shows you how to put it together. So where does the claim require that you put it together in a particular way? I thought you agreed earlier that these last three limitations, the said limitations, are just limitations about what it's capable of doing. You're absolutely right, Your Honor. The claim does require those and the assembly instruction does not show those other two. We did argue that in a brief, but that wasn't my primary argument that I was going to focus on here this morning. Okay. Anything more you want to say to the rest of your time for rebuttal? Actually, yes, Your Honor. That would be great. Thank you. Okay. Mr. Foreman? Thank you. May it please the Court. I'll start with the print and publication issue. There was substantial evidence that the Board relied on to find that the instruction sheet and the Braytec catalog were both printed publications before the August 2007 filing date of the patent. Actual evidence or inferences drawn from the evidence? Well, first we have the Scholar Declaration, which I acknowledge that Mr. Scholar is an interested witness. But there have been prior cases from this Court, specifically the enhanced security research case, which was another case from the office, where there was a declaration from an interested witness that the Board relied on and this Court confirmed. So I don't think just the fact that Mr. Scholar… But would you agree that if the record had nothing more than Mr. Scholar's declaration, then that wouldn't be enough? Or do you think that would be enough? I think that would be enough. I don't see any requirement to corroborate his testimony. The enhanced security research… What do you do with the Lazar Kaplan case? Excuse me? It says generally corroboration is required of any witness whose testimony alone is asserted to invalidate a patent. I'm not sure, Your Honor. I just know the… That's not an interference case. That's a general real sight in cases, and we basically don't rely on uncorroborated. It goes back to Woodland Trust. I understand, Your Honor. In the enhanced security research case, which was another case about whether a document was a printed publication, this Court relied on a declaration from an interested witness. But that wasn't the only piece of evidence in the record, right? There were other things that were taken into account in combination with the interested witness's declaration that ultimately led to an affirmance that it was a printed publication. In that case, Your Honor, the document had a date on it. I believe it was a month and a year, but there was a question of whether that document was, in fact, a draft or a document that was actually published. And so without that, it was without – and then the declaration came in saying that that document was actually published and not a draft. So – but there was nothing corroborating that fact from the declaration. But regardless, we have corroborating evidence in this case. We have the Braytech 2006 catalog, which clearly shows the product. Let me just focus on the notion that I realize that your adversary said that he believes that there's an inference that can be drawn. If a article is for sale, the instructions will be in the box. Correct. And that's what the Board is relying on. They make that inference, right? Correct. But there is no factual – the only factual support would be Mark Scholar's testimony, right? Mark said when I bought the product in 2012, there was an instruction sheet in it. Correct. But I didn't see any other evidence in the record supporting the notion factually, as opposed to inferentially, that an instruction sheet would be in the box. Correct. There's no evidence of – there's no direct evidence that this product was for sale in 2006. No, no, I'm just talking about with the instruction in the box. Correct. And that's Mark, right? Mark said in 2012 he bought the product with the instruction sheet. And in footnote 10, you walk away from Mark. Well, yeah, I mean that – Because he's interested. No, because I don't think that buying in 2012 necessarily shows that it was available in 2006. I mean, I just think that the other evidence that we have in this case is stronger than that. We didn't really need to rely on that. But I guess maybe Mark Scholar's declaration just confirms the inference that multi-component products are sold with instruction assembly sheets. Correct, and I heard today that Posen Council doesn't seem to question that, that when you buy something like this television console, in general, it comes with an instruction sheet. I don't understand what the instruction sheet is used for here. I mean, the catalog shows the parts, right? Yes, the instruction – But this isn't a claim to a particular product that's in a particular configuration. It's just the last three limitations here talk about it's being capable of doing these things. So why is everybody concerned about whether the instruction sheet showed the thing being constructed in a particular configuration when the claim doesn't address itself to that? For whatever reason – The examiner hung himself with the instruction sheet, right? Yeah, for whatever reason – He's hanging in the gallows, he's hanging with the instruction sheet wrapped around his neck. For whatever reason, the re-exam request came in with the instruction sheet as the reference, the primary reference here that the examiner agreed with. But I agree that you don't need to show the product broken down into parts for there to be – It's efficient to infringe this claim or the construction of the claim that it have these parts which are capable of doing – being attached together in a particular construction. It doesn't – it's not a claim to a particular configuration, right? Correct, and I think that the CES daily document could have served as the prior art reference here, and I think the board even noted that, but it wasn't. But it's a process case. Excuse me? It's a process case. It's a question of whether – was the examiner right on the grounds that the examiner expressed? Yes, correct. Not a question of whether or not the examiner could have been right if he hadn't used the instruction sheet. Correct, and I think that, you know, even though the instruction sheet may make it a little more of a difficult case as compared to the CES daily document, there's still sufficient evidence here. We have the Braytec catalog. We have the CES daily. We have the declarations. I think all of those put together are enough to give the board substantial evidence for implication. Any other questions? No. Okay. Thank you, Mr. Holmes. Mr. Holmes? Yes, thank you, Your Honor. I'd just like to clarify a couple of issues. On the corroboration for the printed publication, I believe opposing counsel indicated that the declaration that was in that case was by an interested witness, but I'm not sure that I read the case that way. It was – that was an ex parte reexamination. Is this enhanced security research you're talking about? Yes, yes, Your Honor. I'm guessing he was referring to the dissent there, which describes the declaration as coming from an interested witness. Okay. I mean, the way that I read the main opinion was that it came from a third party and that it didn't indicate that the gentleman that gave the – the CEO of the company that gave the declaration was actually an interested party. But in any event, the other cases that are relied upon for the corroboration or the type of – the type of declaration, the Inmate Natures Remedies case, which was cited, was a third party that testified as to a public record. That was the Danish Open Files Act, and it was a government official that was giving that declaration, so they were not an interested party. The other cases that are kind of critical in this area is Inouye Hall was a third party librarian testifying about a document in a library. And then the Inouye Wire, Inouye Lister, and the Brucklemaier cases are all documents which relate to public records, which are held by either the Australian Patent Office, the Copyright Office, or in the Brucklemaier – Why isn't the catalog here corroboration for the testimony? So the – why isn't the catalog corroboration for the testimony? The – well, the testimony itself indicates that the assembly instruction is what was used for the rejection. So the assembly instruction is the primary reference. So it's not the catalog and it's not the picture. But I'm asking – it's not the catalog that's the prior reference, but why isn't it corroboration for the instruction sheet? The catalog reference indicates that it was a product, but it didn't have any sales information in it. It didn't have a price index. It didn't actually indicate that it was for sale. There's no direct evidence from the catalog. The direct evidence you can infer from the catalog is that there was a unit, that somebody took a picture of it, and that they may have been ready to build it. It had these parts, right? And it had the parts. Now, I'm going to – I was going to – that's my next point that I was going to key into particularly with your indication that the catalog by itself showed all parts. But if you look specifically at the CES daily and that picture, it doesn't really show how the parts go together. I believe that the requester didn't use the catalog itself as their primary reference. And the rejection was that because they didn't feel it showed enough of the parts and how they were assembled in order to read upon – But the claim doesn't cover how it's put together. I'm sorry? The claim doesn't cover how it's put together. The claim covers in parts of the other functional language at the moment how it's assembled in different configurations. How it's capable of being assembled. Correct. Correct. Okay. Anything else? All right. Thank you. Thank both counsel.